# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 18, 2018

Plaintiff-Appellee,

v

No. 338515
Berrien Circuit Court
LC No. 2016-001979-FC

TERRANCE JEROM SHELBY, JR.,

Defendant-Appellant.

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Terrance Jerom Shelby, Jr., appeals by right his jury convictions of second-degree murder, MCL 750.317, and carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b, arising from the shooting death of Grady Manns. The trial court sentenced defendant to serve 162 months to 720 months in prison for his murder conviction and to serve 2 years in prison for his conviction of felony-firearm. For the reasons explained below, we affirm.

## I. BACKGROUND FACTS

The evidence presented to the jury showed that Manns, who was 18 years of age, had been seeing defendant's stepdaughter, who was then 13 years of age. On the night at issue, defendant's stepdaughter snuck Manns into the home. Defendant discovered Manns in the house and purportedly began yelling for his gun. Defendant's stepdaughter and Manns fled the home. Defendant told police officers that he obtained a handgun, went outside, and fired at Manns as he climbed over a fence in defendant's backyard. The shot struck Manns in the chest, and Manns collapsed and died approximately 200 feet from the home. At trial, defendant maintained that he shot Manns in self-defense after Manns returned to the home and tried to break in.

## II. ANALYSIS

Defendant first argues that the trial court erred when it refused to instruct the jury on the offense of reckless discharge of a firearm causing death as a lesser included offense of murder. This Court reviews de novo a trial court's decision whether to give a requested instruction on a lesser included offense. See *People v Jones*, 497 Mich 155, 161; 860 NW2d 112 (2014).

-1-

The charges that a jury may consider in a criminal prosecution are a matter of substantive law governed by statute. See *People v Cornell*, 466 Mich 335, 353; 646 NW2d 127 (2002). Under MCL 768.32(1), a trial court may only instruct the jury on an offense that is "inferior to that charged in the indictment, or of an attempt to commit that offense." In this context, an inferior offense means that the offense must be a necessarily included lesser offense of the charged offense. *Cornell*, 466 Mich at 354-357. That is, it must be "impossible to commit the greater offense without first committing the lesser offense." *Id.* at 361; see also *Jones*, 497 Mich at 164 (stating that a necessarily included lesser offense is an offense that is necessarily committed as part of the greater offense). The statute, however, does not permit "consideration of cognate lesser offenses, which are only 'related' or of the same 'class or category' as the greater offense and may contain some elements not found in the greater offense." *Cornell*, 466 Mich at 355.

In order to determine whether an offense is necessarily included in a greater offense, we must compare the elements of the offenses. *Jones*, 497 Mich at 163-164. If the lesser offense has elements that are not contained within the greater offense, it is a cognate offense, and the trial court may not instruct the jury that it can convict the defendant of the cognate offense. See *id.* at 164 n 23, 165-166.

At trial, defendant asked the trial court to instruct the jury on the lesser included offense of carelessly, recklessly, or negligently using a firearm causing death or injury. That statute provides:

> Any person who, because of carelessness, recklessness or negligence, but not wilfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison for not more than 2 years, or by a fine of not more than $2,000.00, or by imprisonment in the county jail for not more than 1 year, in the discretion of the court. [MCL 752.861.]

The elements of second-degree murder are: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003).

The crime within MCL 752.861 requires the prosecution to prove that the defendant caused or allowed a firearm to be discharged so as to injure or kill the victim, which is not an element of second-degree murder. See, e.g., *People v Lowery*, 258 Mich App 167, 173-174; 673 NW2d 107 (2003) (holding that reckless discharge of a firearm causing injury was not a lesser included offense of assault with the intent to murder because, in relevant part, one can commit an assault with the intent to murder without using a firearm). Because MCL 752.861 includes an element not found in the greater offense of murder, it is a cognate offense, not a lesser included offense. See *Jones*, 497 Mich at 164 n 23. Accordingly, the trial court did not err when it determined that it had no authority to instruct the jury concerning that offense. *Cornell*, 466 Mich at 355.

Defendant next argues that the trial court erred when it scored his sentencing guidelines. Specifically, he maintains that the trial court erred when it assigned 25 points under offense

variable (OV) 6, and erred when it assigned 10 points under OV 19. This Court reviews for clear error a trial court's findings in support of a particular score, but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Although the sentencing guidelines are now advisory, trial courts must still properly score the guidelines by assessing the highest number of points possible under the facts for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). Under MCL 777.36, the trial court had to determine what intent defendant had when he shot Manns. If he had the "premeditated intent to kill" Manns, the trial court had to assess 50 points. MCL 777.36(1)(a). If he had the "unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result," the trial court had to assess 25 points. MCL 777.36(1)(b). As the trial court recognized, it had to "score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

The jury found defendant not guilty of first-degree premeditated murder, but guilty of second-degree murder. In order to reach that verdict, the jury had to have found beyond a reasonable doubt that defendant had the unpremeditated intent to kill, the intent to cause great bodily harm, or had the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of the act was to cause death or great bodily harm. See *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (defining the malice that must be proved to convict a defendant of second-degree murder). That finding corresponded with the intent stated under MCL 777.36(1)(b). So the trial court had to assess 25 points under OV 6 unless it had information that was not presented to the jury that would warrant finding that defendant had a different intent, MCL 777.36(2)(a), or it found that defendant had the intent for second-degree murder or involuntary manslaughter and that the "death occurred in a combative situation or in response to victimization of the offender by the decedent," MCL 777.36(2)(b). Defendant has not identified any information that was not presented to the jury that would warrant a different finding and there was no evidence that Manns victimized defendant or that his death occurred in a combative situation. Consequently, the trial court did not err when it assigned 25 points under OV 6.

The trial court also had to score OV 19, which generally involves conduct done by the defendant to avoid being caught and held accountable for the sentencing offense. See *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). The trial court must, by way of example, assign 25 points if the offender's conduct threatened the security of a penal institution or court, or must assign 15 points if the offender used force or the threat of force against a person or property to interfere with the administration of justice. MCL 777.49(a) and (b). If the offender "otherwise interfered with or attempted to interfere with the administration of justice," then the trial court must assess 10 points. MCL 777.49(c).

This Court has already held that an offender's attempt to hide or dispose of a weapon can amount to interference with the administration of justice within the meaning of MCL 777.49(c). See *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). The trial court did not err in assessing 10 points because defendant informed the police officers during his interview

that he had fired a handgun at Manns and, when he learned that Manns had died, he threw the gun away.

Finally, defendant argues that the prosecutor committed misconduct by arguing that there was blood found at the scene of the shooting and that the blood belonged to Manns. This Court reviews de novo whether the prosecutor engaged in misconduct that denied the defendant a fair and impartial trial. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). A prosecutor may not argue facts that were not supported by the evidence admitted at trial and may not mischaracterize the evidence. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

During his closing remarks, defense counsel argued at some length that the police officers' investigation was inept and provided an incomplete picture. In particular, defense counsel discussed the fact that the police department lost the swabs taken from the spots that appeared to be blood along the path from defendant's home to the location where officers discovered Manns's body. He suggested that the spots might not be Manns's blood and stated that the loss of the evidence called into question the credibility of the police witnesses. He even characterized the lost evidence as a cover up.

In reply, the prosecutor agreed that the officers should never have lost the blood evidence. She nevertheless argued that the trail depicted in the images from the scene was Manns's blood:

> Do any of you, as reasonable people using your common sense, think that this trail that leads from the chainlink fence on People's two that leaves drops of blood in this alley, drops of blood on the asphalt, drops of blood in the grass and leads to Grady Manns' body, do any of you reasonably believe that that is animal blood?

Notably, although the prosecutor characterized the trail as a trail of blood and argued that common sense established that it was Manns's blood, she never argued that the spots had been tested and demonstrated to be blood. Rather, she argued that a common sense view of the testimony and evidence supported a finding that the trail was in fact blood and that it originated from Manns. And there was ample testimony and evidence to support that inference.

The prosecution presented testimony establishing that Manns was at defendant's home on the night at issue, that defendant fired a handgun at Manns at some point after Manns fled from defendant's home, that Manns suffered a gunshot wound that caused extensive bleeding, which ultimately led to his death, and that Manns's body was found in the street a few hundred feet away from defendant's home. There was also photographic evidence and testimony that officers found what appeared to be blood spots and bloody prints along the most direct path from defendant's home to the place where officers found Manns's body. From this evidence, the prosecutor could reasonably argue that defendant shot Manns, that Manns bled as he fled, and that the images did in fact depict a blood trail deposited by Manns as he fled from defendant's home. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (stating that prosecutors are free to argue the evidence and all reasonable inferences to be drawn from the evidence as it relates to their theory of the case). As such, the prosecutor's remarks were proper commentary on the evidence.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica